**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| MARCY L. LUCCHESI, | ) | Case No. 22-11481 |
| | ) | |
| Debtor. | ) | Hon. Jacqueline P. Cox |
| | ) | |
| | ) | Debtor's Motion Set for: **Sept. 1, 2026, at 1 p.m.** |

# INTERESTED PARTIES' OPPOSITION TO DEBTOR'S MOTION TO REOPEN

John Robert Weiss
(jrweiss@duanemorris.com)
Gerald L. Maatman, Jr.
(GMaatman@duanemorris.com)
Tyler Zmick
(TZmick@duanemorris.com)
Brett Bohan
(BBohan@duanemorris.com)
DUANE MORRIS LLP
190 South LaSalle Street, Suite 3700
Chicago, Illinois 60603
Telephone: (312) 499-6700

**ATTORNEYS FOR INTERESTED PARTIES**

Specialized Education of Illinois, Inc. ("SEI"), Specialized Education Services, Inc. ("SESI"), and FB Topco, Inc. (collectively, the "Interested Parties") hereby file their Opposition to the Motion to Reopen Chapter 7 Bankruptcy Case (the "Motion" or "Motion to Reopen") (Dkt. 18) filed on August 13, 2026, by putative counsel for Debtor Marcy L. Lucchesi ("Debtor"):

## I. INTRODUCTION

This Court should deny the Motion to Reopen because Debtor has not shown a proper purpose for reopening this bankruptcy case. For over 3.5 years, Debtor failed to disclose a cause of action for an alleged violation of the Illinois Genetic Information Privacy Act (the "GIPA") she has been pursuing against the Interested Parties since January 2024 based on events that took place fourteen months ***before*** she filed this bankruptcy matter. Debtor was required to disclose the GIPA claim when she filed her Chapter 7 petition on October 4, 2022. She did not. This Court subsequently granted Debtor a discharge and closed the case without knowing that another purported asset existed. Debtor has now moved to reopen this case to disclose the GIPA claim only after the Interested Parties moved for summary judgment in the state court GIPA action.[1] The Court should deny Debtor's Motion for three reasons:

***First***, Debtor cannot meet her burden of demonstrating a legitimate cause for reopening this bankruptcy proceeding under § 350(b) and Seventh Circuit precedent. That reopening is unwarranted is shown by the unexplained passage of over 2.5 years from Debtor purportedly learning of the GIPA claim in December 2023 before seeking to reopen this case in August 2026.

***Second***, allowing Debtor to reopen her case after she has litigated her GIPA claim for over 2.5 years would prejudice the Interested Parties, who have expended significant resources

[1] A copy of the motion for summary judgment pending in the Circuit Court of Cook County is attached as **Exhibit A**. The Interested Parties ask this Court to judicially notice their motion under Federal Rule of Evidence 201. *See In re Fink*, 351 B.R. 511, 520 (Bankr. N.D. Ill. 2006) (courts may judicially notice matters of public record).

defending the GIPA action. Had Debtor disclosed the claim when required, the Trustee (not Debtor) would have controlled the estate's interest in the GIPA claim and would have prosecuted the case to benefit Debtor's creditors. Debtor's concealment permitted her to prosecute the estate's claim for years in a class posture, forcing the Interested Parties to incur expenses litigating class-specific issues that would not have arisen from administration of the estate's individual claim.

***Third***, even if this Court were to grant Debtor's Motion and reopen this case, Debtor would be unable to demonstrate "excusable neglect" and would thus be unable to amend her schedules, thereby rendering her requested relief futile.

## II. FACTUAL BACKGROUND

### A. Debtor's 2022 Chapter 7 Bankruptcy Case

1. On October 4, 2022, Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court. *See* Dkt. 1. Debtor listed $10,856 in total assets and $51,309.10 in total liabilities on her petition. *Id.* at 9. Debtor filed property schedules with her Chapter 7 petition, which required that she list all "[m]oney or property owed to [her]." *See id.* at 14.

2. When the "Schedule A/B: Property" form asked if she had any "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment," Debtor checked "No." *Id.* at 15. When asked if she had any "[o]ther contingent and unliquidated claims," Debtor only disclosed an unspecified potential consumer-protection claim. *Id.* (describing claim as "[a]ny cause of action available to Debtor for violation of any consumer protection laws, the Fair Credit Reporting Act, or any other potential cause of action against any creditor reporting information on Debtor's credit report"). When asked if she had any other financial assets or property that she had not listed, Debtor checked "No." *Id.*

3. Debtor affirmed under penalty of perjury that the information provided in the

petition and schedules was "true and correct." *Id.* at 46, 55.

4. Based on Debtor's representations to the Court and the Trustee, Richard M. Fogel, and her testimony during the § 341 creditors' meeting on November 14, 2022, the Court discharged Debtor's debts on January 17, 2023. The case was then closed on January 20, 2023. Dkts. 13, 15.

**B. Debtor's GIPA Class Action Filed In Illinois State Court**

5. After receiving her discharge, Debtor filed a putative class action against the Interested Parties on January 4, 2024, in the Circuit Court of Cook County, Illinois under the GIPA.

6. In Debtor's GIPA case (the "GIPA Action"), Debtor alleges that she was hired for a position with Interested Party SEI in June 2021. Sec. Am. Compl. ¶ 36 (Cir. Ct. Cook Cnty. Aug. 7, 2025) (**Ex. B**). Debtor claims that during the hiring process, she had to submit to a physical exam on July 29, 2021, during which she was asked about her family medical history. *Id.* ¶ 37.

7. Based on these allegations, Debtor asserts that the Interested Parties violated the GIPA by indirectly soliciting, requesting, or requiring her to disclose her genetic information "as a condition of employment" in violation of § 25(c)(1) of the statute, 410 ILCS 513/25. *Id.* ¶ 41.

8. The parties in the GIPA Action have been litigating the case since early 2024.

**C. Class Action-Related Litigation In Federal Court**

9. The defendants named in Debtor's initial GIPA complaint removed the case from the Cook County Circuit Court to the U.S. District Court for the Northern District of Illinois on February 29, 2024, under the Class Action Fairness Act ("CAFA"). *See Lucchesi v. Specialized Education of Illinois, Inc., et al.*, No. 24-CV-01732, Dkt. 1 (N.D. Ill.).

10. Debtor subsequently filed a first amended complaint in federal court naming the Interested Parties as defendants. *See* Dkt. 23 (June 24, 2024). On July 8, 2024, Debtor filed a motion to allow expedited discovery on the issue of whether CAFA's "local controversy"

exception and/or "home state controversy" exception applied such that the case may be subject to remand under abstention principles. *Lucchesi*, Dkt. 24.

11. On January 17, 2025, U.S. District Court Judge Jorge L. Alonso issued an order granting Debtor leave to conduct expedited discovery "regarding [] whether a CAFA exception applies." *See Lucchesi v. Specialized Educ. of Illinois, Inc.*, 2025 WL 240968, at *3 (N.D. Ill.)

12. On January 31, 2025, Debtor served the Interested Parties with wide-ranging interrogatories and document requests directed at class-related issues. *See, e.g.*, Debtor's Interrog. No. 2 to SEI ("Identify the name, home address, and state of residence for every Class Member….").[2] Despite the Interested Parties advising Debtor's counsel in the GIPA Action that they would agree to stipulate to remand the case to the Cook County Circuit Court to avoid the need for conducting CAFA-related discovery, Debtor's counsel refused to so stipulate until the Interested Parties provided class discovery. *See Lucchesi*, Dkt. 37 at 3-6.

13. Accordingly, the Interested Parties responded to Debtor's requests for class discovery on March 7, 2025, by serving written responses to Debtor's six sets of discovery and producing 133 pages of documents. Debtor thereafter agreed to stipulate to remand the case to state court on March 13, 2025. *See Lucchesi*, Dkt. 40.

### D. Post-Remand State Court Proceedings

14. After the case was remanded, and after Debtor filed her operative Second Amended Complaint, the Interested Parties moved to dismiss arguing that Debtor failed to adequately allege that the Interested Parties "indirectly" solicited her family medical history in violation of the GIPA.

[2] The interrogatories and document requests that Debtor served on SEI are attached hereto as **Exhibits C** and **D**, respectively. Debtor served substantially similar discovery requests on SESI and FB Topco, Inc.

The Court denied the motion to dismiss on May 6, 2026, after which the Interested Parties filed their Answer and Affirmative Defenses on June 3, 2026.

15. On or around June 16, 2026, and in connection with counsel's pre-discovery fact investigation, the Interested Parties first learned of the Chapter 7 bankruptcy case that Debtor filed on October 4, 2022, in this matter. *See* Ex. A at 3.

16. On June 23, 2026, the Interested Parties notified Debtor's counsel in the GIPA Action regarding their discovery of Debtor's October 2022 bankruptcy filing, explained that the GIPA claim asserted in the state court case is the property of the bankruptcy estate, and demanded that Debtor voluntarily dismiss her GIPA claim due to Debtor lacking standing. *See* **Ex. E**, June 23-24, 2026, Email Correspondence Between Counsel at 1-2.

17. On July 8, 2026, after Debtor had ignored their demand to voluntarily dismiss the GIPA case, the Interested Parties filed a Combined Motion to Dismiss and Motion for Summary Judgment (the "Motion for Summary Judgment" or "MSJ") in the GIPA Action arguing that (i) Debtor lacked standing because the GIPA claim is property of the bankruptcy estate under 11 U.S.C. § 541(a)(1) and (ii) her claim was barred under the doctrine of judicial estoppel. *See* Ex. A.

18. When the parties appeared for the second presentment of the MSJ on August 11, 2026, Circuit Court Judge William B. Sullivan set the following MSJ briefing schedule: Debtor to respond to the MSJ by September 22, 2026; the Interested Parties to file their reply in support of their MSJ by October 20, 2026; and oral argument to be heard on December 16, 2026. *See* **Ex. F**.

19. Two days later, Debtor filed her Motion to Reopen.

### E. Debtor's Motion To Reopen The 2022 Chapter 7 Bankruptcy Case

20. On August 13, 2026, Debtor filed the present Motion seeking to "reopen the Ch. 7 Case for the purpose of amending her Bankruptcy Schedule A/B No. 33 to add the claim giving

rise to the GIPA Case." Dkt. 18, Mot. ¶ 9. Debtor asserts that "[t]his reason to reopen the Ch. 7 Case comports with [§] 350(b) that allows a case to be reopened to 'administer assets.'" *Id.*

21. The Motion contains a section titled "INADVERTENT OMISSIONS FROM SCHEDULES AND SOFA," in which Debtor admits that she "did not list the GIPA Case on her Schedules" filed on October 4, 2022, states that she "was unaware that a cause of action existed until almost a year after the Ch. 7 Case was closed [on January 20, 2023] when she first discussed the potential claim with counsel for the GIPA Case in approximately December 2023," and that she "did not inform class action counsel that she had previously filed for bankruptcy and did not understand that [the] GIPA Case was impacted in any way by the Ch. 7 Case." *Id.*

22. The Motion contains no declaration or evidence as to Debtor's "inadvertent omissions." The Motion does not indicate that the Trustee would use the GIPA claim to distribute asserts to Debtor's creditors. Nor does the Motion mention the current posture of the GIPA Action, in which the Interested Parties' MSJ is currently pending before the Cook County Circuit Court.

## III. LEGAL STANDARD

Section 350(b) of the Bankruptcy Code provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). Courts consider several factors to determine whether to reopen a closed bankruptcy case, including: (i) the length of time the case has been closed; (ii) whether the debtor would be entitled to relief if the case were reopened; and (iii) the availability of nonbankruptcy courts, such as state courts, to entertain the claims. *Redmond v. Fifth Third Bank*, 624 F.3d 793, 798 (7th Cir. 2010). In deciding "whether to reopen a bankruptcy case in the context of an undisclosed cause of action," courts also consider: (i) the benefit to the debtor; (ii) the prejudice to the defendant in the pending litigation; and (iii) the benefit to the debtor's creditors. *Riggins v.*

*Ambrose*, 500 B.R. 190, 195 (N.D. Ga. 2013) (citation omitted). As the movant, Debtor has the burden to show that cause exists to reopen the case. *In re Redmond*, 380 B.R. 179, 186 (Bankr. N.D. Ill. 2007); *see In re Greer*, 89 B.R. 757, 759 (Bankr. S.D. Ill. 1988) ("[A] case will be reopened only upon demonstration of compelling circumstances justifying it.").

## IV. ARGUMENT

### A. Debtor Has Not Shown That This Case Should Be Reopened Under § 350(b)

#### 1. Debtor's Motion Is Untimely And The Product Of Undue Delay

In assessing whether a motion to reopen is timely, courts consider the movant's lack of diligence and any prejudice to other interested parties caused by the delay. *See Redmond*, 624 F.3d at 799. The Seventh Circuit has consistently noted that "[a] debtor who has cause for reopening cannot dilly-dally." *In re Kleynerman*, 93 F.4th 1071, 1074 (7th Cir. 2024). "The passage of time weighs heavily against reopening," and "[t]he longer a party waits to file a motion to reopen a closed bankruptcy case, the more compelling the reason to reopen must be." *Redmond*, 624 F.3d at 799; *see In re Servin*, 2025 WL 863298, at *2 (Bankr. N.D. Ill. Mar. 18, 2025) ("[F]ormer debtors do not have 'eternal access to federal court for all disputes related in some way to the debts handled in the bankruptcy proceeding.'") (citation omitted). In this case, the unjustified delay and the prejudice to the Interested Parties show that Debtor's Motion is untimely and should be denied.

##### *a. Unjustified Delay*

Reopening a closed bankruptcy case is unwarranted where, as here, a debtor waits years after her case closes to seek reopening – particularly where she has long known of the facts underlying the purported need for reopening. *See, e.g.*, *Imler v. Combs-Skinner*, 465 F. App'x 552, 553 (7th Cir. 2012) (affirming denial of motion to reopen where debtors "waited too long – nearly five years – before moving to reopen and raised arguments" that could have been raised earlier).

"Courts in this circuit routinely decline to reopen cases where the movant waited to seek relief." *In re Servin*, 2025 WL 863298, at *4 (citing, *inter alia*, *In re Bianucci*, 4 F.3d 526, 527, 529 (7th Cir. 1993), where debtor did not move to reopen until two years after bankruptcy case closed and five months after learning of issue that allegedly warranted reopening, and *McGarry v. Integrated Genomics, Inc.*, 2018 WL 4699779, at *2 (N.D. Ill. Sept. 30, 2018), where debtor delayed "more than a year after it knew about the claim").

Here, over 3.5 years elapsed between this Court closing Debtor's Chapter 7 bankruptcy case on January 20, 2023, and Debtor moving to reopen the case on August 13, 2026. The GIPA claim Debtor seeks to add to her bankruptcy petition accrued over five years before she filed her Motion to Reopen. Debtor concedes that she knew of her GIPA claim as of ***December 2023*** at the latest, *see* Mot. ¶ 7 (claiming Debtor "was unaware that a cause of action existed until…she first discussed the potential claim with counsel for the GIPA Case in approximately December 2023"), yet she waited 2.5 years from that time to seek reopening, and then only after the Interested Parties moved for summary judgment in the GIPA Action.[3] Debtor "has not adequately justified the multi-year tardiness in coming back to these doors and, therefore, [her] dilatoriness is 'in itself a sufficient basis to deny the Motion to Reopen.'" *Servin*, 2025 WL 863298, at *5 (citation omitted). Thus, this Court should deny the Motion because of Debtor's unjustified yearslong delay. *See In re UAL Corp.*, 809 F.3d 361, 364 (7th Cir. 2015) (affirming denial of reopening because movant's "delay…was inexcusable" and movant did "nothing to protect his interests for nearly a decade").

*b. Prejudice To The Interested Parties*

Courts also consider "the prejudice…to the defendant in the pending litigation" when

[3] Even after the Interested Parties advised Debtor's counsel in the GIPA Action on June 23, 2026, that Debtor's omission of the GIPA claim from her 2022 bankruptcy petition deprived her of standing, *see* Ex. F, Debtor inexplicably waited ***seven additional weeks*** to file her Motion to Reopen.

assessing the timeliness of a motion to reopen. *In re Rochester*, 308 B.R. 596, 601-02 (Bankr. N.D. Ga. 2004). For instance, "courts consider whether reopening 'risks prejudice to the nonmovant,' such as by rendering wasted legal fees incurred during the delay." *Servin*, 2025 WL 863298, at *4; *see Redmond*, 624 F.3d at 799 ("Redmond…proceeded to litigate the matter for seven years in state court….In the meantime Pinnacle had incurred costs in the state-court proceeding….").

Granting Debtor's Motion to Reopen in this case – filed years after she initiated the GIPA Action – would unfairly prejudice the Interested Parties, who have expended significant resources defending the case. *See* Parts II.C-D. Courts regularly refuse to reopen bankruptcy cases under similar facts. *See, e.g.*, *McGarry*, 2018 WL 4699779, at *2 ("This delay also came at a price to BMS, as it had to defend itself against several lawsuits brought by McGarry."). The prejudice here is based not only on the Interested Parties having had to defend a case filed by someone without standing to bring the claim asserted. They have also been prejudiced by Debtor having filed her case as a putative class action, thereby forcing the Interested Parties to litigate class-related issues with no connection to the merits (or lack thereof) of Debtor's GIPA claim. *See* Part II.C. Had Debtor disclosed the GIPA claim in 2022, it would have been known to the Trustee and administered as property of the estate. In that scenario, the Interested Parties would not have been forced to defend a putative class action. *See, e.g.*, *Dechert v. Cadle Co.*, 333 F.3d 801, 802 (7th Cir. 2003) ("The named plaintiff in a class action usually has only a small stake in the action, and…very few of the benefits of settling the class action or prosecuting it to judgment would be received by the trustee (which is to say the creditors)….") (citation omitted). Thus, the protracted class litigation would not have proceeded had Debtor complied with her disclosure obligations.

In sum, because of Debtor's concealment, the Trustee had no opportunity to administer the estate's GIPA claim when he should have. Debtor later filed the GIPA claim herself and as a

putative class representative, despite the individual claim belonging to the bankruptcy estate. The class allegations created litigation that would not otherwise have occurred in that form – including substantial litigation over CAFA's exceptions. The Interested Parties consequently incurred substantial fees litigating issues generated ***solely by the putative class posture***. And only after the Interested Parties moved for summary judgment did Debtor attempt to reopen this case and retroactively correct the disclosure. But Debtor's nondisclosure already altered the course of the GIPA Action and imposed costs on the Interested Parties that cannot be undone by the amendment of Debtor's disclosures in 2026. The Court should deny Debtor's Motion.

### 2. Debtor Would Not Be Entitled To Relief Even If Her Case Were Reopened

Debtor's lack of entitlement to relief also counsels against reopening her bankruptcy case. "[A] closed bankruptcy proceeding should not be reopened 'where it appears that to do so would be futile and a waste of judicial resources.'" *Redmond*, 624 F.3d at 803 (citation omitted). Reopening this case would be futile because even if the Court were to grant the Motion, Debtor would be unable to amend her schedules to add the GIPA claim (the sole basis for Debtor's Motion to Reopen) because she cannot show that her delay in seeking to amend resulted from "excusable neglect." *See* Part IV.B. Thus, this factor also weighs against reopening the case.

### 3. Scheduling An Asset Debtor Knew Of But Failed To Disclose Is Not A Proper Basis For Reopening This Case

Use of the power to reopen "is reserved for matters such as the correction of errors, amendments necessitated by unanticipated events that frustrate a plan's implementation, and the need to enforce the plan and discharge." *In re Zurn*, 290 F.3d 861, 864 (7th Cir. 2002) (citation omitted). The relief Debtor seeks – to disclose a previously omitted asset as a defensive move following the Interested Parties' filing of their MSJ – is not a proper basis for reopening.

Debtor was required to disclose the GIPA claim, which accrued before she filed for bankruptcy in October 2022. A bankruptcy estate includes all legal and equitable interests of the debtor, including causes of action (whether or not the debtor has filed suit). *See Barnes v. Lolling*, 2017 IL App (3d) 150157, ¶ 15; 11 U.S.C. § 541(a)(1). "[O]nce a bankruptcy action is instituted, all unliquidated lawsuits become part of the bankruptcy estate and only the bankruptcy trustee has standing to pursue them." *Bd. of Managers v. 1120 Club, LLC*, 2016 IL App (1st) 143849, ¶ 41. Therefore, once the debtor files a petition, she "is divested of standing to pursue [the claims]." *Id.* Where, as here, a debtor fails to disclose assets to the bankruptcy court, the undisclosed assets become property of the estate; any such property that is not scheduled, administered, or abandoned remains the estate's property even after the bankruptcy matter closes. *See* 11 U.S.C. § 554(d).

Courts consistently apply this analysis to dismiss claims brought by plaintiffs who did not disclose their claims in prior bankruptcy proceedings. In *Barnes*, for example, plaintiff failed to disclose a personal injury claim during Chapter 13 bankruptcy proceedings, received a discharge, and later filed his personal injury suit individually. 2017 IL App (3d) 150157, ¶ 17. In affirming summary judgment for defendants based on plaintiff's lack of standing, the Illinois Appellate Court explained that "a debtor's failure to list a legal claim as an asset in his…bankruptcy proceeding causes the claim to remain the property of the bankruptcy estate and precludes the debtor from pursuing the claim on his…own behalf." *Id.* ¶ 16 (cleaned up).

Here, Debtor's failure to disclose the claim thus gave rise to the Interested Parties' MSJ pending in Illinois state court. Debtor admits that her GIPA claim belongs to the estate that was created when she filed her bankruptcy petition in October 2022. *See* Mot. ¶ 7. If she was unaware of the claim when the case closed in January 2023, she had an affirmative duty to seek to amend her schedules to disclose the claim by moving this Court to reopen as soon as she learned of the

claim. Yet despite learning of the claim in December 2023 at the latest, she did not seek to amend her schedules until over 2.5 years later, and only after she faced the Interested Parties' MSJ based on her non-disclosure in bankruptcy, and before her deadline to respond to the MSJ. Nor did Debtor inform this Court that she moved to reopen only after an MSJ was filed in the GIPA Action.

This Court should reject Debtor's "hand in the cookie jar" attempt to come clean about her assets only ***after*** being caught. *See In re Critical Care Support*, 236 B.R. 137, 140 (E.D.N.Y. 1999) ("'fraud or intentional design' on the part of the movant' justifies denial of a motion to reopen") (quoting *In re Shondel*, 950 F.2d 1301, 1304 (7th Cir. 1991)). The facts show that Debtor seeks to reopen not because the omission of the GIPA claim was "inadvertent" but because she hopes the Trustee will abandon the claim such that her standing in the GIPA Action might "revest":[4]

***First***, Schedule A/B required Debtor to disclose claims against third parties, explicitly referencing "employment disputes" as an example. Dkt. 1 at 15. Debtor represented that she had no such claims, despite the GIPA claim arising directly from an employment-related event that predated the filing of her 2022 bankruptcy. And Debtor failed to disclose the claim despite a demonstrated awareness of how to disclose contingent claims, as shown by her listing a consumer-protection claim in her petition. *Id.* Her selective disclosure of one legal claim while omitting another suggests deliberation, not inadvertence.

***Second***, Debtor has extensive bankruptcy experience. She filed four bankruptcy petitions in this District before filing her most recent bankruptcy case: (1) Case No. 92-18459 (filed Aug. 18, 1992); (2) Case No. 94-13632 (filed July 7, 1995); (3) Case No. 02-21571 (filed June 3, 2002); (4) Case No. 11-31149 (filed July 29, 2011). Debtor also previously failed to disclose all contingent

---

[4] *See In re Nelson*, 100 B.R. 905, 906 (Bankr. N.D. Ohio 1989) ("[Debtors] request reopening to permit them to add a cause of action and then to abandon said action. This is not a compelling reason justifying…reopening….").

claims in connection with the petition filed in her 2011 bankruptcy. *See* MSJ Ex. 7 at 1-2 (noting Debtor did not disclose to bankruptcy court or trustee the "pre-petition FDCPA claims she asserts in this case against Axelrod" and that Debtor falsely testified during creditors' meeting "that she had never filed bankruptcy before, in spite of the fact she had actually filed bankruptcy no less than three times prior"). Indeed, the *Axelrod* defendant moved to dismiss Debtor's FDCPA case on judicial estoppel grounds in a case Debtor filed in 2011, thereby reflecting Debtor's knowledge of the need to disclose all existing legal claims in her bankruptcy filings. *See also* MSJ Ex. 8 (Debtor's voluntary dismissal of FDCPA lawsuit with prejudice, filed same day the *Axelrod* defendant moved to dismiss on judicial estoppel grounds). Someone with Debtor's familiarity with bankruptcy cannot plausibly claim ignorance of her duty to disclose legal claims.[5]

***Third***, Debtor's GIPA claim is not the only claim she failed to disclose in her 2022 petition. Debtor asserted at least two additional claims that should have been (but were not) identified in her petition. Specifically, Debtor asserted claims against Epson America, Inc. in 2022 under consumer protection laws and the federal Computer Fraud and Abuse Act. *See* MSJ at 13; MSJ Exs. 9-11. In addition, Debtor was a named plaintiff in a putative class action filed against Hisamitsu America, Inc. in a California federal court involving "over-the-counter and prescription products including transdermal patches and skin care products." *See* MSJ at 13; MSJ Ex. 12. These

[5] Moreover, Debtor's claim of inadvertence depends on an improbable confluence of omissions. *See* Mot. ¶ 7 (alleging Debtor "did not inform class action counsel that she had previously filed for bankruptcy and did not understand that [the] GIPA Case was impacted…by the Ch. 7 Case"). Debtor was represented by experienced bankruptcy counsel in her prior bankruptcy cases, whose representation required investigation into her assets and probing questions designed to uncover potential claims. *See, e.g.*, *In re Seare*, 493 B.R. 158, 210 (Bankr. D. Nev. 2013). On the other side, plaintiff's attorneys routinely ask about a prospective client's bankruptcy history at the outset of a representation. *See, e.g.*, Katherine E. O'Leary, *Inadvertence of Unfair Advantage: The Fifth Circuit's Approach to Judicial Estoppel in Bankruptcy*, 45 Tex. Tech. L. Rev. 143, 167 (2013) ("'[h]ave you ever filed for bankruptcy?' may be the single most important question a lawyer asks a client"; explaining that "[e]very plaintiff's attorney should ask this question before filing suit to short-circuit a judicial estoppel defense") (citation omitted). Yet Debtor contends that her bankruptcy counsel never learned of the GIPA claim and that her litigation counsel never learned that she had filed for bankruptcy – not once, but five times. These reciprocal omissions bear on the plausibility of Debtor's assertion that the nondisclosure resulted from mere inadvertence.

facts further undermine the Motion's unsubstantiated claim that Debtor's omission was inadvertent. *See In re McMellon*, 448 B.R. 887, 894 n.2 (S.D.W. Va. 2011) (noting debtor's failure to disclose "a separate personal injury lawsuit").[6] In sum, Debtor has not shown that her failure to disclose her GIPA claim was inadvertent. Thus, the Court should deny Debtor's Motion to Reopen.

### B. Debtor Cannot Show That Her Failure To Amend Her Schedules Earlier Was Due To Excusable Neglect

Even if Debtor could satisfy her burden of showing this case should be reopened under § 350(b), denial of the Motion would be warranted because she cannot show excusable neglect regarding her delay in seeking to amend her schedules. Federal Rule of Bankruptcy Procedure 1009(a) allows debtors to amend schedules "as a matter of course" only "***before*** the case is closed." (Emphasis added). "[A] debtor seeking to amend a schedule after a case is closed must clear a hurdle that was not previously in place" – namely, that the "failure to amend the schedules – to fully disclose the property of the estate, as [she] was required to do, … before the case was closed, was the result of excusable neglect." *In re Gerstner*, 649 B.R. 38, 44 (Bankr. E.D. Wis. 2023).

The U.S. Supreme Court has articulated the "excusable neglect" standard as follows:

> [W]e conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include…the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993). Debtor cannot meet this standard for the reasons stated in Part IV.A.3 above.

*In re Sievert* is instructive. In that case, the bankruptcy court denied debtor's attempt to amend her schedules to add a pre-petition personal injury claim after her Chapter 7 case was

---

[6] The Interested Parties note that Debtor seeks to reopen the case "to add the claim giving rise to the GIPA Case" to her schedules, Mot. ¶ 9, but she does not seek to add the claims asserted in these two separate cases to her schedules.

reopened because she could not demonstrate excusable neglect. *In re Sievert*, 634 B.R. 1030, 1035-36 (Bankr. W.D. Wis. 2021). The court determined that the assertion that debtor "was not aware she had a personal injury claim until after her bankruptcy was closed" was "unavailing," noting that "even if [debtor] was unaware of the existence of the claim on the day she filed bankruptcy, she had a continuing duty to disclose the interest when she says she learned about it." *Id.* at 1037.

The present facts are analogous. Assuming Debtor only learned of her claim in December 2023 after her bankruptcy case closed, she should have immediately moved to reopen this case to amend her schedules ***then*** – rather than waiting over 2.5 years to do so. Nor does the assertion that Debtor "did not inform class action counsel that she had previously filed for bankruptcy and did not understand that GIPA Case was impacted…by the Ch. 7 Case," Mot. ¶ 7, show inexcusable neglect. *See In re Sievert*, 634 B.R. at 1036 ("lack of legal knowledge [did] not render the omission excusable neglect"). The other *Brunswick* factors also show the absence of excusable neglect, as there is "no danger of prejudice" because Debtor "had many chances to disclose and amend [but] did not do so until well after her omission was discovered." *Id.*; *see* Part IV.A.1.b (discussing prejudice to Interested Parties if Debtor were to amend her schedules).[7]

**V. <u>CONCLUSION</u>**

For these reasons, the Interested Parties request that the Court deny the Motion to Reopen.

---

[7] The Interested Parties would not necessarily oppose reopening if ***the Trustee*** sought to reopen the case. *See In re McMellon*, 448 B.R. at 895 (holding "only that the *debtor's* motion to reopen for the purposes of adding an omitted claim should not be granted where the motion was filed only as a response to his adversary's attempt to dismiss his underlying claim, and where there is substantial evidence that his failure to disclose that claim was not simply inadvertent" and noting that "courts have held that the *trustee* should not be precluded from bringing a claim on behalf of the estate even where the debtor failed to disclose it") (emphasis in original). But the Trustee has not sought to reopen this case, and there is no indication that he would attempt to pursue the GIPA claim for Debtor's creditors.

**Dated: August 26, 2026**

**SPECIALIZED EDUCATION OF ILLINOIS INC.,** ***et al.***

By: */s/ John Robert Weiss*

John Robert Weiss
(jrweiss@duanemorris.com)
Gerald L. Maatman, Jr.
(GMaatman@duanemorris.com)
Tyler Zmick
(TZmick@duanemorris.com)
Brett Bohan
(BBohan@duanemorris.com)
DUANE MORRIS LLP
190 South LaSalle Street, Suite 3700
Chicago, Illinois 60603
Telephone: (312) 499-6700

***Attorneys for Interested Parties***

**CERTIFICATE OF SERVICE**

The undersigned certifies that on August 26, 2026, he caused true and correct copies of the foregoing document to be served upon the following persons via the Court's CM/ECF System and, for those not listed in the CM/ECF system, at the addresses listed in the attached Service List by placing copies of the foregoing document in properly addressed envelopes, with postage prepaid, and depositing them in the U.S. Mail chute at 190 S. La Salle St., Chicago, Illinois 60603, at or before 5:00 p.m.

**Via ECF**:

**Ronald P Strojny, Jr.**: rpstrojny@yahoo.com

**Adam G. Brief**: Ustpregion11.es.ecf@usdoj.gov

**Patrick S. Layng**: USTPRegion11.ES.ECF@usdoj.gov

**Richard M. Fogel**: fogeltrustee@gmail.com; il72@ecfcbis.com; richard-fogel-1441@ecf.pacerpro.com

**By U.S. Mail**: See attached Service List

*/s/ John Robert Weiss*
John Robert Weiss

# Service List

Al Piemonte
364 W Grand Ave
Elmhurst, IL 60126-1137

Aspire Credit Card
Attn: Bankruptcy
Po Box 105555
Atlanta, GA 30348-5555

Care Animal Hospital Of Libertyville
1214 W Park Ave
Libertyville, IL 60048-2555

Clerk of the Court of Lake County
Docket #: 01SC00003530
18 North Country Street
Waukegan, IL 60085-4304

Clerk, First Municipal Division Doc
# 1995-M1-130181
50 W Washington St., Room 1001
Chicago, IL 60602-1316

Clerk, Third Municipal Division Doc
# 20033002442
2121 Euclid Ave #121
Rolling Meadows, IL 60008-1500

Credit Acceptance Corp
Po Box 5070
Southfield, MI 48086-5070

Dept of Ed/Nelnet
Attn: Bankruptcy Claims/Nelnet
Po Box 82505
Lincoln, NE 68501-2505

First PREMIER Bank
Attn: Bankruptcy
P.O. Box 5524
Sioux Falls, SD 57117-5524

Americash Loans
PO Box 1728
Des Plaines, IL 60017-1728

Bridgecrest Acceptance Corp
7300 East Hampton Avenue
Suite 100
Mesa, AZ 85209-3324

Celtic Bank
268 S State St Ste 300
Salt Lake City, UT 84111-5314

Clerk of the Court of Lake County
Docket #: 14SC00001446
18 North Country Street Waukegan,
IL 60085-4304

Clerk, First Municipal Division
Doc # 19991127116
50 W Washington St., Room 1001
Chicago, IL 60602-1316

Comenity/Burlington
Attn: Bankruptcy
Po Box 182125
Columbus, OH 43218-2125

Credit Collection Services
Attn: Bankruptcy
725 Canton St
Norwood, MA 02062-2679

Enhanced Recovery Company
Attn: Bankruptcy
8014 Bayberry Road
Jacksonville, FL 32256-7412

(p)FORD MOTOR CREDIT COMPANY
P O BOX 62180
COLORADO SPRINGS CO 80962-2180

Advocate Health and Hospitals Corp
4440 W 95th St
Oak Lawn, IL 60453-2600

Armed Forces Bank
Attn: Bankruptcy
320 Kansas Ave
Fort Leavenworth, KS 66027-1139

Capital One Auto Finance
Attn: Bankruptcy
7933 Preston Rd
Plano, TX 75024-2302

Certified Services Inc
1300 N Skokie Hwy, Ste 103A Gurnee,
IL 60031-2144

Clerk, First Municipal Division Doc
# 19911112510
50 W Washington St., Room 1001
Chicago, IL 60602-1316

Clerk, First Municipal Division Doc
# 20031169343
50 W Washington St., Room 1001
Chicago, IL 60602-1316

Cortney Ferina
1310 Longacre
Wheeling, IL 60090-5932

Credit One Bank
Attn: Bankruptcy Department
Po Box 98873
Las Vegas, NV 89193-8873

Fidelity Financial Services LLC
1415 W 22nd St
Ste 100
Oak Brook, IL 60523-8416

Future Finance
15859 S Ridgeland
Oak Forest, IL 60452-2782

Huntington Bank
Attn: Bankruptcy
41 S High St
Columbus, OH 43215-3406

(p)JEFFERSON CAPITAL SYSTEMS LLC
PO BOX 7999
SAINT CLOUD MN 56302-7999

Geico
ATTN: Region 3 Underwriting
PO BOX 9105
Macon, GA 31208-9105

Genesis FS Card Services
Attn: Bankruptcy
Po Box 4477
Beaverton, OR 97076-4401

National Credit Adjusters, LLC
327 West 4th Avenue
Po Box 3023
Hutchinson, KS 67504-3023

IL Dept of Employment Security
Attn: Bankruptcy Dept
PO Box 19286
Springfield, IL 62794-9286

(p)ILLINOIS DEPARTMENT OF REVENUE
BANKRUPTCY UNIT
PO BOX 19035
SPRINGFIELD IL 62794-9035

Progressive Leasing
256 West Data Drive
Draper, UT 84020-2315

Kohls/Capital One
Attn: Credit Administrator
Po Box 3043
Milwaukee, WI 53201-3043

Lutheran General
1775 Dempster St
Park Ridge, IL 60068-1174

Speedy Cash
3527 N Ridge Road
Wichita, KS 67205-1212

Navient
Attn: Bankruptcy
Po Box 9500
Wilkes-Barr, PA 18773-9500

Nelnet
Attn: Claims
P.O. Box: 82505
Lincoln, NE 68501-2505

(p)JEFFERSON CAPITAL SYSTEM LLC
MAILROOM
200 14TH AVE E
SARTELL MN 56377-4500

Progressive Leasing Company
124 N Schmale Rd
Carol Stream, IL 60188-2151

Santander Consumer USA
Attn: Bankruptcy
Po Box 961245
Fort Worth, TX 76161-0244

Marcy L Lucchesi
1317 E Windham Circle, Unit 108
Palatine, IL 60074-7937

(p)SPRING OAKS CAPITAL LLC
1400 CROSSWAYS BLVD STE 100B
CHESAPEAKE VA 23320-0207

Sst/mcu
4315 Pickett Road
Saint Joseph, MO 64503-1600

Total Visa/The Bank of Missouri Attn:
Bankruptcy
Po Box 85710
Sioux Falls, SD 57118-5710

Verizon Wireless
Attn: Bankruptcy Dept
PO Box 4002
Acworth, GA 30101-9003